106 F.3d 404
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of AMERICA, Plaintiff/Appellee,
v.
Dennis MALLARD and Nathanial Gause, Jr., Defendants/Appellants.
 No. 96-2284, 96-2350.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1996.
Decided Jan. 6, 1997.
 
 Before COFFEY, FLAUM and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Defendants Gause and Mallard pleaded guilty to conspiring to distribute cocaine base "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1), and 846.[1] Gause and Mallard now challenge their sentences. Gause contends that the testimony relied on by the district court in determining his relevant conduct for sentencing purposes 1) failed to show that his additional crack purchases were for purposes of distribution and, 2) did not provide a reliable basis for attributing more than five grams of cocaine base to him. Mallard's counsel filed a motion to withdraw, and a through brief, pursuant to Anders v. United States, 386 U.S. 738 (1967), arguing that Mallard has no non-frivolous issues to raise on appeal. Mallard resists this motion and argues that the district court erroneously sentenced him to a longer sentence than he agreed to in his Plea Agreement and that his attorney's assistance was ineffective in violation of the Sixth Amendment. We affirm Gause's sentence because the district court properly calculated Gause's relevant conduct, and we dismiss Mallard's appeal, and grant his counsel's motion to withdraw, because he has no nonfrivolous issues to raise on appeal.
 
 I. GAUSE'S RELEVANT CONDUCT
 A. Background
 
 2
 The indictment charging Gause, and his co-conspirators, covered the period from January 1994 to August of 1995. During this period, the government used a confidential informant to purchase or attempt to purchase crack cocaine from Gause in six separate transactions over a four-day period. On each of these occasions, Gause distributed the crack cocaine to the informant out of the residence of Fred and Mabel Jones, two co-defendants involved in the conspiracy. After Gause pleaded guilty to these offenses, the probation officer determined that the base offense level for these government-monitored transactions, which involved 3.7 grams of cocaine base, was 22. See U.S.S.G. § 2D1.1(c)(9). Applying a three-level reduction for acceptance of responsibility and criminal history category I, the probation officer determined that Gause's guideline range for imprisonment was 30-37 months. (PSI at 12); see U.S.S.G. § 5A (Sentencing Table).
 
 
 3
 The government filed an objection to the PSI's calculation of Gause's sentence because it did not account for Gause's uncharged drug offenses as allowed under the relevant conduct sentencing provisions, U.S.S.G. § 1B1.3. It argued that the PSI failed to account for the direct and circumstantial evidence showing that Gause was more heavily involved in the distribution of cocaine base than just the times actually recorded by the government. The government specifically disagreed with the probation officer's characterization of Gause's additional purchases of cocaine base (established through statements made by Gause's co-conspirators) as being for his personal use rather than for distribution purposes (and thus not relevant conduct). Pointing to Gause's lack of legitimate employment during the conspiracy period, and noting that users often support their use by obtaining drugs for others, the government urged a conclusion that Gause's relevant conduct for sentencing purposes included at least five (5) grams of cocaine base.
 
 
 4
 At the sentencing hearing, several of Gause's co-conspirators testified to Gause's additional crack purchases and distributions on occasions other than those recorded by the government.[2] They testified to the frequency and quantity (the number of "rocks" or "sixteenths") of Gause's purchases, as well as to those occasions when they actually witnessed Gause transfer the crack to third parties. (Tr. at 5-32.) A government agent testified that the average weight of a $20 "rock" is 0.1 grams, and that a "sixteenth" weighs approximately 1.75 grams. (Tr. at 33.) Significantly, Gause acknowledged that his relevant conduct included approximately 4.5 grams of crack cocaine even though he had only been charged and convicted of distributing 3.7 grams of cocaine base. (Tr. at 41.) Based on all the hearing testimony, the district court found that Gause's relevant conduct included at least 5 grams of cocaine base, and sentenced him to sixty months' imprisonment, the statutory minimum.[3] (Tr. at 41-46.) Although it did not specifically state that the additional transactions were part of the same course of conduct as the transactions which resulted in his conviction, the court noted that "in light of the controlled buys and the fact that it's clear that this defendant ... pled guilty to Count 1 of the conspiracy, that a portion of [the additional amount purchased] was distributed to others." (Tr. at 42.) Furthermore, the judge embraced the reasoning offered by the government that Gause relied on income from distributing cocaine base to fund his personal use of the drug. (Tr. at 47-48.) With respect to the quantity of cocaine base attributed to Gause, the district court based its conclusion primarily on the testimony of Mallard and Mabel Jones. The court noted that Jones' testimony showed that Gause bought a minimum of 0.1 gram of cocaine base on at least forty (40) other occasions, and thus supported an additional attribution of 4 grams. Moreover, it found that Mallard's testimony supported an additional 1.8 gram attribution based on testimony that he and Gause traveled to Missouri on five occasions to purchase a "sixteenth" which they split.[4] Accordingly, the district court held that the evidence showed by a preponderance that Gause's relevant conduct included at least 5 grams of cocaine base.
 
 B. Discussion
 
 5
 A defendant's relevant conduct which is used to determine offense levels for purposes of sentencing includes not only the conduct charged in the indictment and punished by the conviction but also conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a); United States v. Acosta, 85 F.3d 275, 279 (7th Cir.1996); United States v. Howard, 80 F.3d 1194, 1202 (7th Cir.1996) (as amended); United States v. Townsend, 73 F.3d 747, 751 (7th Cir.1996). Where a defendant is sentenced on the basis of uncharged conduct involving other drug transactions pursuant to U.S.S.G. § 1B1.3(a)(2), the government must prove by a preponderance of the evidence 1) that the uncharged conduct bore the necessary relation to the offense of conviction, and 2) the quantity of drugs involved in that conduct. Acosta, 85 F.3d at 279. Unless clearly erroneous, we accept the district court's legal characterization of the relationship between the charged and uncharged conduct, as well as its factual determination of the quantity of drugs attributable to a defendant. Id.; Townsend, 73 F.3d at 751.
 
 
 6
 Gause challenges the district court's implicit finding of the necessary relationship between his charged and uncharged conduct, as well as its calculation of the quantity of his relevant conduct. Gause primarily takes issue with the district judge's stated conclusion that Gause sold a portion of the drugs he purchased in the uncharged transactions. (Def.'s Br. at 13.) In this regard, he contends that neither that Smith nor Mabel Jones testified that they actually saw him sell or physically transfer any of the additional cocaine base he purchased in the uncharged transactions to a third-party.[5] Gause challenges the testimony of his co-defendant Mallard on the same ground--that although Mallard revealed their trips to Missouri to buy "sixteenths" of cocaine base, he did not testify to seeing Gause transfer his share to a third-party.[6] (Def.'s Br. at 10.) Thus, the crux of Gause's argument appears to be that the evidence showed he was a user, but not a distributer of crack, and therefore, that the district court erred in implicitly finding that Gause's charged and uncharged conduct were part of the same course of conduct within the meaning of U.S.S.G. § 1B1.3(a). Significantly, however, Gause concedes (as he did before the district court) that relevant conduct of 4.5 grams (or 4.9 grams at the most) of cocaine base is supported by the testimony of Smith and by Mabel Jones regarding their observance of third-party sales on four separate occasions.[7] (Def.'s Br. at 14.)
 
 
 7
 Two or more offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes or similar modus operandi." U.S.S.G. § 1B1.3(a)(2), comment. (n. 9(A)); Acosta, 85 F.3d at 281. Notably, Gause's prior distributions resulting in his conviction and his uncharged drug activity involved common accomplices--the Jones, Mallard, and Smith--and the same modus operandi of transacting "business" at the Jones' residence. Moreover, nothing in the record suggests that Gause's suppliers (Mallard and Fred and Mabel Jones) distinguished between their transactions with him that resulted in his conviction and those that he claims are unrelated purchases for his personal use. See United States v. Howard, 80 F.3d 1194, 1203 (7th Cir.1996) (including uncharged drug purchase as part of defendant's relevant conduct for purposes of sentencing defendant for drug distribution conviction where supplier did not view the purchase as unique even though defendant claimed it was for personal use). Hence, it was reasonable for the district court to conclude that Gause's offenses were part of an ongoing series of related offenses carried out for the common purpose of continuing the conspiracy. See U.S.S.G. § 1B1.3(a)(2), comment. (n. 9(B)) (noting that uncharged offenses may be part of the "same course of conduct" as the offense of conviction if there is a sufficient relationship between them to support the conclusion that they are "part of a single, episode, spree, or ongoing series of offenses"); see also Acosta, 85 F.3d at 280 (upholding district court decision to treat defendant's uncharged activities as relevant conduct where it is clear from the record that the district court accepted the government's reasoning concerning the significance of the other purchases); Precin v. United States, 23 F.3d 1215, 1219 (7th Cir.1994) (holding that drugs obtained by a defendant for his personal use from his supplier were "part of the same ... common scheme or plan," the plan being the conspiracy to distribute).
 
 
 8
 Indeed, any argument that personal use quantities should not be considered in determining the relevant conduct of a defendant charged with being involved in a conspiracy to distribute drugs has been rejected in this circuit. See United States v. Snook, 60 F.3d 394 (7th Cir.1995). In Snook, we noted that all of the cocaine the defendant obtained (for resale and for personal use) came from the same supplier, and that it was not divided into packages for distribution and packages for personal use. Id. at 396. More importantly, we stated that "the amount that Snook personally consumed directly affected the conspiracy--the more Snook used, the more he had to sell to bank-roll his habit." Id. Because we found that "personal-use cocaine still influenced the size and scope of the conspiracy," we concluded that the inclusion of personal-use cocaine was appropriate in determining the defendant's relevant conduct attributable to the defendant for sentencing purposes under U.S.S.G. § 1B1.3(a)(2); accord Precin, 23 F.3d at 1219 ("Any cocaine which Precin received for his personal use was necessarily intertwined with the success of the distribution.").
 
 
 9
 Because Gause has similarly pleaded guilty to a conspiracy to distribute cocaine base, and aiding and abetting its distribution, Snook and Precin support attributing Gause's additional cocaine purchases, whether for resale or personal use, to his relevant conduct. Thus, Gause's argument--that the witnesses did not testify to observing his third-party sales--does not show that the district court was clearly erroneous in attributing Gause's other crack purchases to his relevant conduct. But even if we conclude that Gause's other purchases were part of the same course of conduct as his crimes of conviction (and thus satisfies the relationship test of U.S.S.G. § 1B1.3(a)), we cannot affirm unless the district court's calculation of the quantity of attributable conduct was not clearly erroneous. E.g., Acosta, 85 F.3d 275, 279 (7th Cir.1996) (noting that district court's calculation of the quantity of drugs involved in an offense is a finding of fact which will not be disturbed absent clear error). A defendant has a due process right to be sentenced on the basis of reliable evidence. Id. at 282; Townsend, 73 F.3d at 751; United States v. Beler, 20 F.3d 1428, 1432 (7th Cir.1994). Due process is not satisfied where the quantity of relevant conduct is based on "nebulous eye balling." Acosta, 85 F.3d at 282 (citing United States v. Mumford, 25 F.3d 461, 467 (7th Cir.1994)). Nevertheless, a district court may estimate a defendant's relevant conduct quantity, for instance, by multiplying the minimum number of times the defendant purchased drugs by the minimum quantity sold on each occasion. Id. at 282; Howard, 80 F.3d at 1204.
 
 
 10
 Gause claims that the district court violated the sentencing guidelines and due process principles by attributing more than 5 grams of cocaine base to his relevant conduct. Again, he points to the lack of testimony concerning observations of him transferring 5 grams of cocaine base to third parties. But as previously discussed, the district court was not required to consider only the testimony regarding his observed third-party sales. It could also estimate Gause's relevant conduct based on the testimony concerning his additional purchases.
 
 
 11
 During oral argument, the government pointed out that at Gause's sentencing hearing, Jones testified that Gause purchased cocaine base from her at least fifty times over the course of the conspiracy period, and that on each occasion he would sometimes buy a "dime", and sometimes buy one or two, or as many as four or five, $20 rocks.[8] Using one rock (0.1 grams) as the minimum amount and a minimum of forty additional purchases, the district court noted that Jones' testimony supported attributing an additional 4 grams of cocaine base to Gause.[9] Although Gause recognizes the validity of the district court's estimation method, see United States v. Garcia, 66 F.3d 851, 859 (7th Cir.1995) (holding that district court did not err in determining defendant's sentence for conspiracy to distribute drugs even though government's witness gave only estimates and not mathematically precise figures of the amount of drugs bought or sold by the defendant, where the district court relied on the most conservative numbers from the witness' testimony), he argues that the estimation was based on unreliable testimony. Specifically, he contends that Jones' testimony is unreliable, noting that her statement that Gause sometimes bought four or five rocks contradicted her statement to the probation officer that Gause usually purchased one or two rocks from her. Although a district judge's failure to reconcile conflicting testimony about a defendant's relevant conduct drug quantity may constitute clear error in some circumstances, see Beler, 20 F.3d at 1436-37 (refusing to uphold a sentence where witness gave conflicting reports of the quantity of drugs involved in the defendant's usual purchases); United States v. Duarte, 950 F.2d 1255, 1262 (7th Cir.1991) (explaining that where a sentencing court "relies upon one of two contradictory statements offered by a single witness, it should directly address the contradiction and explain why it credits one statement rather than the other), cert. denied, 506 U.S. 859 (1992), the discrepancy noted by Gause is inconsequential. The district court did not rely on Jones' testimony that Gause sometimes bought four or five $20 rocks. Instead, it based its estimate of Gause's relevant conduct on a minimum purchase of one $20 rock, the minimum amount that Jones told the probation officer Gause purchased. At the sentencing hearing, however, Jones testified that sometimes Gause would buy "a dime," meaning a $10 rock of cocaine (.05 grams). Gause apparently overlooked this discrepancy and did not point it out as a ground for remand. But due process principles require district courts to base relevant conduct estimates on the minimum quantity usually purchased, or at least state why another amount was used. See Acosta, 85 F.3d at 282 (remanding where district court failed to explain why it rejected the one-half ounce figure as the smallest amount purchased where that quantity would have resulted in a significantly lower base offense level). Unlike in Acosta, the district court's estimation using a $20 rock as the minimum purchase is inconsequential to Gause's sentence. Even using 0.05 grams as the average weight of a "dime" or a $10 rock, Jones' testimony would still support attributing two additional grams of cocaine base to Gause based on forty additional purchases. When added to the 3.7 grams he was charged with distributing, his relevant conduct would still exceed five grams.
 
 
 12
 Even without Jones' testimony, the district court's conclusion that Gause's relevant conduct included at least five grams of cocaine base could be based only on Mallard's testimony regarding their trips to Missouri to buy a sixteenth.[10] As the government pointed out at argument, Mallard testified that he and Gause bought a sixteenth of crack on at least five occasions and that they split this amount. Hence, Gause's share of the purchase was 3.7 grams (5 X 1.5 grams / 2). When added to the 3.7 grams involved in Gause's charged offense, the combined offenses support the district court's attribution of over 5 grams of cocaine base to Gause. Still, Gause argues that Mallard's testimony does not support the district court's findings because Mallard failed to consistently testified to the number of times that Gause purchased crack from him. (Tr. at 26).[11] The government argues that Mallard's testimony was that Gause purchased cocaine base from him approximately three time a week for a year, which amounts to an additional 156 transactions. However, the transcript reveals that Mallard's testimony was equivocal concerning the number of times Gause purchased from him. See Tr. at 24-26.12 Again, this inconsistency is not significant because Mallard consistently testified that he and Gause traveled to Missouri on at least five occasions to purchase "sixteenths" of cocaine base from an unnamed party. Thus, the district court's reliance, if any, on Mallard's testimony regarding Gause's purchases from him, to support its calculation of Gause's relevant conduct is not clearly erroneous.
 
 
 13
 For the foregoing reasons, we affirm Gause's sentence based on the district court's calculation of his relevant conduct.
 
 II. MALLARD'S ATTORNEY'S MOTION TO WITHDRAW
 A. Background
 
 14
 Before his arrest, Mallard met with federal authorities on two occasions at which he admitted his involvement in the drug distribution business. Eventually, charges were brought and Mallard pleaded guilty to conspiring to distribute cocaine base. The PSI states (and the parties appear to agree) that the written agreement indicated that Mallard's relevant conduct was between 150 and 500 grams of cocaine base, and that he would fall under offense level 31 (34 minus three levels for acceptance of responsibility) and criminal history IV, where the guideline sentencing range is 151-188 months; or in the alternative, if Mallard was determined to be a career offender within the meaning of U.S.S.G. § 4B1.1, he would fall under offense level 31 and criminal history category VI, where the guideline sentencing range is 188-235 months.
 
 
 15
 The probation officer's independent investigation revealed that Mallard traveled with Mabel and Fred Jones to Charleston, Missouri on several occasions for purposes of purchasing crack for resale and that Mallard was their primary seller from approximately January 1994 to July 26, 1995. (PSI at 4.) The probation officer further reported that Shirley (Jones) Smith stated that while she and Mallard lived together, he sold between $200 and $300 worth of $20 "rocks" of crack cocaine seven days per week during the eighteen-month conspiracy period. Id. at 6. The probation officer found this would conservatively compute to 216 grams of cocaine base (1 gram (ten $20 rocks) X 12 sales per month (3 times a week for 4 weeks of a month) X 18 months), and thus initially calculated Mallard's total offense level as 31 (34 less three levels for acceptance of responsibility) (PSI at 7-8.) See U.S.S.G. § 2D1.1(c)(3). But because Mallard had two prior convictions for a crime of violence and for a controlled substance offense, the probation officer reported that Mallard could be sentenced as a career offender under U.S.S.G. § 4B1.1 (PSI at 8.) Under this guideline, criminal history category VI and offense level 37 apply when the statutory maximum penalty for a defendant's offense is life imprisonment. See U.S.S.G. § 4B1.1(A). Because a maximum sentence of life imprisonment applies for offenses involving more than 50 grams of cocaine base, see 21 U.S.C. § 841(b)(1)(A)(iii), and based on Mallard's guilty plea that his relevant conduct included between 150 and 500 grams of cocaine base, the PSI noted that Mallard's offense level would be 37 under this career offender guideline. (PSI at 8.) After deducting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, the PSI found Mallard's total offense level to be 34, which translated, under criminal history category VI, into a 262-327 month sentencing range. (PSI at 19.) The probation officer specifically noted that its calculation conflicted with the sentence contemplated in the Plea Agreement.[13]
 
 
 16
 At the sentencing hearing, Mallard claimed that he did not understand the probation officer's role and that his attorney misrepresented his possible sentence when explaining the terms of the plea agreement. His attorney indicted to the court that Mallard became upset just prior to the sentencing hearing when he learned that he could be sentenced under offense level 34 and criminal history category VI (and thus face a sentence within the 262-327 month sentencing range) if the court found he was a career offender. Mallard testified that his attorney advised him during the plea discussions that he would be sentenced under offense level 31 and criminal history category IV, translating into a 151-188 month sentencing range, even if the court found he was a career offender. Significantly, however, he also testified that he was familiar with the PSI's calculation, that he did not want to withdraw his guilty plea, and that he distributed at least 50 grams of cocaine case during the relevant conspiracy period. Based on this admission to relevant conduct which, under 21 U.S.C. § 841(b)(1)(A)(iii), invoked the statutory maximum penalty of life imprisonment, the district court sentenced him as a career offender and imposed a 300-month sentence, a term within the applicable sentencing range, using criminal history category VI and offense level 34.
 
 B. Analysis
 
 17
 As noted by Mallard's attorney, Mallard admitted at the sentencing hearing that he distributed at least 50 grams of cocaine base on occasions other than those for which he was convicted (not to mention that he admitted in his plea agreement that his relevant conduct included between 150-500 grams of crack). Mallard's attempt to recant this admission in his appellate brief is unsupported and ineffective. Because the statutory maximum penalty applies to offenses involving this amount of crack cocaine, Mallard's offense level was properly determined to be 37 and his criminal history, VI, under the career offender guidelines. See U.S.S.G. § 4A1.2. Because the district court imposed a sentence within the relevant sentencing range, Mallard has no non-frivolous issue to raise concerning the district court's application of the guidelines to his offense.[14]
 
 
 18
 Mallard, nevertheless, contends that he has a nonfrivolous Sixth Amendment claim, arguing that he was misled by his attorney and by the terms in his plea agreement regarding his sentencing options. Indeed, the government agrees that the plea agreement contained inaccurate information concerning Mallard's sentence if the court applied the career offender guidelines. Assuming, without deciding, that Mallard could show that his counsel deficiently performed in failing to correct the erroneous statements in the Plea Agreement, Mallard must also demonstrate that he was prejudiced b his attorney's performance in order to show a Sixth Amendment violation. See Strickland v. Washington, 466 U.S. 668, 689 (1984). This he cannot do. At the sentencing hearing, Mallard acknowledged that he read the PSI and its addendum which indicated that the sentencing provisions in the Plea Agreement were inaccurate. (Tr. at 7.) He also told the judge that he did not want to withdraw his plea and that he was knowingly and voluntarily pleading guilty. (Tr. at 9.) Most Significantly, Mallard cannot show prejudice because he failed to demonstrate that he would not have pleaded guilty if his attorney had not been deficient. United States v. Malave, 22 F.3d 145, 148 (7th Cir.1994) (rejecting ineffective assistance claim where defendant failed to demonstrate that but for his counsel's allegedly deficient performance he would not have pleaded guilty). Thus, a Sixth Amendment claim would also be frivolous. Accordingly, we grant counsel's motion to withdraw and dismiss Mallard's appeal.
 
 
 
 [1]
 Gause pleaded guilty (without entering into a plea agreement) to one count of Conspiracy to Distribute and to Possess With Intent to Distribute Cocaine Base, 21 U.S.C. §§ 841(a)(1) and 846, and four counts of Aiding and Abetting the Distribution of Cocaine Base, 21 U.S.C. § 841(a)(1). Mallard pleaded guilty pursuant to a Plea Agreement to one count of Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine Base, 21 U.S.C. §§ 841(a)(1) and 846
 
 
 [2]
 The following co-conspirators testified: Mallard, Mabel Jones, and Shirley (Jones) Smith who lived with Mallard during the conspiracy and who is the daughter of Fred Jones (Mabel's husband)
 
 
 [3]
 A base offense level of 26 applies to offenses involving at least 5 but less than 20 grams of cocaine base. See U.S.S.G. § 2D1.1(c)(7). Applying a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, Gause's total offense level was 23. Under criminal history category I, this translates into a guideline sentencing range of 46-57 months. (Tr. at 45.) However, because the court found that Gause's relevant conduct included at least 5 grams of cocaine base, the statutory provisions for sentencing under 21 U.S.C. § 841(b)(1)(B) were applicable. Thus, the Court imposed the statutory minimum sentence of 5 years' (60 months) imprisonment, rather than a term within the lesser guideline sentencing range. (Tr. at 46); see U.S.S.G. § 5G1.1(b)
 
 
 [4]
 Using a conservative estimate of 1.5 grams for each sixteenth, the district court found that Gause and Mallard purchased approximately 7.5 grams. The court then concluded that Gause distributed at least 1.8 grams, reasoning that Gause sold at least half of his 3.75 gram share
 
 
 [5]
 For instance, Gause argues that although Jones claimed she was present on some of the occasions Gause sold the crack to third parties, she did not testify that she actually saw the alleged transferee receive anything. (Tr. at 18.)
 
 
 [6]
 Gause misstates Mallard's testimony. Despite Mallard's inability to identify who bought from Gause, how much was purchased, and when these "deals" took place, Mallard consistently testified that he witnessed Gause sell crack to third-parties in front of the home where Gause and Smith resided. (Tr. at 27, 29.)
 
 
 [7]
 Gause contends that the "only uncontradicted testimony of the number of additional [crack] sales" was Smith's and Jones' testimony regarding Gause's sales of crack to a third-party on four separate occasions. (Def.'s Br. at 14.) Using 0.2 grams (or 0.3 grams at the most) as the average amount of crack transferred per sale, Gause contends that these four sales support an additional attribution of 0.8 grams (or, at the most, 1.2 grams). Adding this to the 3.7 grams he was charged with distributing, Gause contends that his relevant conduct should have been 4.5 grams (or 4.9 grams at the most). Id
 
 
 [8]
 Jones testified that "sometimes [Gause] would buy a dime. Sometimes he would buy a 20. Be short, and sometimes he would buy as many as 4 or 5." (Tr. at 15.)
 
 
 [9]
 Despite Jones' testimony that Gause purchased crack at her house on fifty occasions, the court's estimation of Gause's relevant conduct took account of Jones' admission on cross-examination (Tr. at 19) that the actual number of Gause's purchases could be less than fifty:
 Let's just round it down to 40, of the 40 additional times that this defendant purchased crack cocaine from Mabel Jones, and you take a 10th of a gram, there's four grams right there. And if you take it 30 times, that's three grams. If you take it 20 times, 20 additional purchases, there's two grams. It's clear that this defendant by a preponderance of the evidence was involved in more than five grams of distribution of crack cocaine under Count 1.
 (Sent. Tr. at 43.)
 
 
 [10]
 As noted by the government at argument, the reliability of Jones' testimony is further supported by Smith's testimony. Smith testified at Gause's sentencing hearing that Gause bought between two and four $20 rocks, three times a week, for the eighteen month conspiracy period. (Sent. Tr. at 6, 9.) Although the district court did not specifically refer to Smith's testimony in calculating Gause's relevant conduct, Smith's testimony would support a minimum attribution of 46 grams of cocaine base. (.2 grams X 3 3 buys per week X 78 weeks)
 
 
 [11]
 Although Mallard testified that Gause bought between two and four rocks of crack from him, three times a week for a one year period (Tr. at 25, 26), he responded on cross-examination that he did not know how many times Gause bought from him: In reply to the government's question, "[a]nd how often would he buy crack cocaine from you?" Mallard answered "I really couldn't say." (Tr. at 25.)
 
 
 [13]
 Mallard's attorney filed several objections to the PSI including its calculation of Mallard's sentencing range. Mallard's attorney argued that even if Mallard was found to be a career offender, he should be sentenced as contemplated in the Plea Agreement, under offense level 31 and criminal history category VI, where the sentencing range is 188 to 235 months. The probation officer responded that its calculations were accurately based on the sentencing guidelines. Notably, in making another objection (not relevant here), Mallard's attorney stated that Mallard's relevant conduct consists of a minimum of 77.94 grams and a maximum of 102.88 grams of cocaine base. (PSI Addendum at 23, 24.)
 
 
 [14]
 Mallard does not challenge the application of the career offender guideline based on his prior convictions