134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard L. TURVEY, Defendant-Appellant.
 No. 97-2886.
 United States Court of Appeals, Seventh Circuit.
 Jan. 8, 1998.
 
 ORDER
 RILEY, Judge.
 
 
 1
 Richard Turvey pleaded guilty to violating 21 .S.C. § 841(a)(1) by possessing "divers quantifies" of marijuana with intent to distribute. On July 18, 1997, the district court sentenced him to the statutory maximum of five years' imprisonment, a $1,000 fine, and three years' supervised release. Turvey appeals his sentence. We affirm.
 
 
 2
 On December 9, 1995, Turvey was stopped for minor traffic violations. Turvey consented to a search of the vehicle during which 43 kilograms of marijuana were found, and Turvey was arrested. While Turvey was in custody, the police found receipts and other documents in the car indicating that Turvey had been in Michigan in November, 1995. After questioning, Turvey gave the police a written statement in which he stated that he had been in the process of delivering marijuana from Tucson, Arizona to Grand Rapids, Michigan when he was stopped and arrested. He was to receive $50 per pound of marijuana delivered. Turvey also confessed that he had made two earlier trips to take marijuana to Michigan, for which he was paid $2,550 and $2,800.
 
 
 3
 Turvey pleaded guilty to the possessing marijuana with intent to distribute. The Presentence Report ("PSR") for Turvey assigned him an offense level under the United States Sentencing Guidelines ("Guidelines") correlating with the delivery of a total of 91 kilograms of marijuana: the 43 kilograms found when he was arrested, and 48 kilograms delivered on his prior trips. The Litter figure was calculated on the basis of the payments he received for those trips--at $50 a pound, Turvey must have delivered 107 pounds, or 48 kilograms.
 
 
 4
 Turkey objected to the PSR, in particular the calculation that his relevant conduct involved the transportation of 91 kilograms of marijuana. As part of his objections, Turvey recanted his statement that he had transported marijuana on his two earlier trips to Michigan, and instead maintained that the two trips had been "dry runs" involving no drugs. Turvey also moved for a downward departure on two bases: first, that he was entitled to a downward departure under § 5K2.0 of the Guidelines as a minor participant; and second, that his criminal history category of V overrepresented the seriousness of his prior record.
 
 
 5
 At the sentencing hearing on July 18, 1997, the judge heard evidence on the "dry run" argument. Turvey testified that when he was first arrested, he told the police that he had made dry runs to from Tucson to Michigan to learn the route, watch for patrol points, select places to stay overnight, and generally gather information. He was paid to make these scouting trips, although he did not carry any drugs on these trips. But the police did not believe him, and pressured him to admit that he transported drugs on the earlier trips, telling him that they would not release him until he admitted it. Turvey testified that, wanting to get home to Tucson in time to see his daughter over the holidays, he agreed to sign a statement that included not only the marijuana transportation on December 9, 1995, but also the two earlier drug runs. In response to Turvey's recantation, the government presented two witnesses at the sentencing hearing. Inspector Mike Kreke testified that he was present throughout Turvey's questioning in police custody. Kreke stated that, although Turvey initially denied making the two earlier trips at all, once Turvey admitted making the trips he did not characterize them as "dry runs" or deny that drugs were involved in those trips. The second witness was Special Agent Tim Brunholtz, a DEA agent for more than 26 years. Brunholtz testified that, in his experience, drug organizations did not encourage, much less pay for, "dry runs" of the type described by Turvey.
 
 
 6
 In ruling at the end of the sentencing hearing, Judge Riley rejected Turvey's argument that no drugs were involved on the earlier trips, stating, "I simply don't believe that." The judge also rejected Turvey's request to depart downward on the ground that Turvey's criminal history category overstated the seriousness of his criminal record. The judge did not directly address Turvey's request for a downward departure because he had a minor role in the offense. Rather, the judge summarized, "Finally, the Court finds that based upon an examination of the presentence report, the evidence [adduced] today, as well as the arguments of counsel on subjects relevant to the presentence report, the appropriate offense level in this case is 21 as set forth in the Probation Department's report, and the criminal history is 5 as set forth in the Probation Department's report." Sentencing Tr. at 59.
 
 
 7
 Turvey raises two issues on appeal, challenging Judge Riley's finding that Turvey delivered drugs on the two November 1995 trips, and the judge's failure to render a clear ruling on his request for a downward departure for a minor role in the offense.
 
 
 8
 This court reviews for clear error a district court's calculation of the amount of drugs for which a defendant is to be held responsible. United States v. Hall, 109 F.3d 1227, 1233 (7th Cir.1997). Here, Turvey essentially created a credibility contest between the oral and written statements he gave to the police after his arrest, and is later recantation of those statements. Judge Riley heard evidence on this issue at the sentencing hearing, and credited Turvey's post-arrest statements over his later attempts to recant. "It is well established that a sentencing court's credibility determinations are accorded exceptional deference." United States v. Acosta, 85 F.3d 275, 280 (7th Cir.1996). Turvey's arguments on appeal simply amount to a request for this court to reweigh the evidence in his favor, which we will not do. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story ..., that finding ... can virtually never be clear error." Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). Turvey has not met his burden of showing clear error on this issue.
 
 
 9
 Turvey also moved the district court for a downward departure pursuant to § 5K2.0 in order to account for his claimed minor role in the offense. His reasoning was that § 3B1.2, the specific guideline that would ordinarily be used to adjust his base offense level downward for a mitigating role in the offense, was not available in this instance because he was the sole participant in the offense of which he was convicted (transporting marijuana).[1] Nevertheless, Turvey maintained that he played a relatively minor role in the drug organization, and so should receive a downward departure under § 5K2.0 for a mitigating circumstance "not adequately taken into consideration" by the Guidelines. 18 U.S.C. § 3553(b). The government contended that § 3B1.2 was the appropriate guideline applicable to Turvey but that Turvey did not merit any adjustment for a minor role. In ruling on this issue, the district court did not identify whether it considered the applicable guideline to be § 3B1.2 or § 5K2.0. The court simply stated that the offense level contained in the PSR, which made no adjustment for Turvey's role in the offense, was correct.
 
 
 10
 On appeal, Turvey claims that this ruling violated Fed.R.Crim.P. 32(c)(1), which requires sentencing courts to state on the record their findings on each part of the PSR challenged by a defendant. Turvey waived this argument, however, by failing to object to the district court's statement of reasons for imposing the sentence it did A defendant's failure to object to the explanation given by the judge at sentencing waives any future argument attacking the sufficiency of that explanation. United States v. Mojica, 984 F.2d 1426, 1444 (7th Cir.1993). Immediately after stating that "the appropriate offense level in this case is 21 as set forth in the Probation Department's report," the court asked whether there were any objections beyond those contained in Turvey's written objections to the PSR. Turvey's attorney replied that there were none, thereby waiving his present argument.
 
 
 11
 Even if Turvey had not waived this argument. it would be meritless. Turvey argues that "[i]t is impossible to determine whether the Court denied the adjustment in offense level under U.S.S.G. § 3B1.2(b) or denied the motion for a downward departure." App. Br. at viii. But Turvey never raised the possibility of a downward adjustment under § 3B1.2 to the district court. Indeed, Turvey argued before the district court that § 5B1.2 did not apply to his case. Thus, the sentencing court's ruling must be read as a denial of the only role-in-the-offense objection that was before it: Turvey's motion for a downward departure pursuant to § 5K2.0. This court does not require district courts to state the reasons for their denials of downward departures from the Guidelines range. United States v. Cureton, 89 F.3d 469, 474 (7th Cir.1996).
 
 
 12
 None of Turvey's arguments on appeal have any merit, and the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This reasoning was incorrect. In his reply brief on appeal, Turvey concedes that § 3B1.2 is the guideline applicable to his role in the offense. App. Rep. Br. at 7