UNITED STATES of America,
Plaintiff–Appellee,

v.

Eligio BACALLAO, Defendant–Appellant.

No. 98–1443.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1998.

Decided July 24, 1998.

Daniel P. Bach (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

John P. Koberstein (argued), Madison, WI, for Defendant–Appellant.

Before ESCHBACH, EASTERBROOK and MANION, Circuit Judges.

MANION, Circuit Judge.

Eligio Bacallao pleaded guilty to one count of knowingly and intentionally possessing cocaine with the intent to distribute or dispense in violation of 21 U.S.C. § 841(a)(1). At sentencing, the district court found that Bacallao's relevant offense behavior involved 3.3 kilograms of cocaine and sentenced him to 168 months' imprisonment. Bacallao appeals his sentence on the grounds that the district court improperly attributed to him quantities of cocaine not part of the offense of conviction. Because we conclude that insufficient factual findings support the district court's conclusion that Bacallao's relevant conduct includes the respective purchases of one and two kilograms of cocaine, we vacate Bacallao's sentence and remand for resentencing.

## I. Background

Beginning in 1996, the Sheriff's Department in Columbia County, Wisconsin and the Federal Bureau of Investigation jointly began investigating the narcotics dealings of Gale Saunders and Eligio Bacallao. Specifically, law enforcement officials believed that Bacallao was storing cocaine at Saunders' paper business in Fall River, Wisconsin. On June 4, 1997, police officers watched Roberto Valdes, with Bacallao as his passenger, drive away from Saunders' business. Police officers stopped the vehicle and asked the two men to exit the car, but Bacallao and Valdes refused and sped away. A high-speed chase ensued, ending when the car went into a ditch. At that point Bacallao was seen throwing white powder out of the window. When the two suspects were apprehended, the police found 75.1 grams of cocaine that remained in the package Bacallao had thrown out the window. A subsequent search of Saunders' business revealed 258.6 grams of cocaine.

The government charged Bacallao with one count of knowing and intentional possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A superseding indictment against Bacallao added a charge of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The conspiracy was alleged to have occurred from on or about August 1995 to June 4, 1997. Bacallao pleaded guilty to possession with intent to distribute cocaine, and the government dismissed the conspiracy charge without prejudice.

Gale Saunders pleaded guilty to possession of cocaine with the intent to distribute and to

the unlawful possession of a firearm and agreed to cooperate with the authorities. In an interview with FBI Special Agent Steven Paulson, Saunders recounted that he routinely allowed Bacallao to store cocaine at his place of business—cocaine that Bacallao would pick up in small quantities, presumably for distribution. Saunders also said that in 1996, Bacallao asked him to arrange the purchase of a kilogram of cocaine through a man named Jim Warren. Saunders successfully arranged the purchase and delivered the kilogram of cocaine to Bacallao.

Also in connection with the Bacallao case, Agent Paulson interviewed Roberto Almaguer, a person believed to be associated with Bacallao in the drug business. Almaguer told Paulson that in late 1996, Bacallao offered him $2000 to go to Chicago and pick up two kilograms of cocaine from a woman named Lydia. Almaguer agreed, retrieved the cocaine, and, as instructed by Bacallao, delivered half of it to a man named Eddie Rodriguez. Almaguer then delivered the remaining kilogram to Bacallao.

The presentence investigation report attributed to Bacallao the following drug amounts: the 75.1 grams found in or near the car; the 258.6 grams found at Saunders' place of business; the kilogram Saunders arranged to purchase for Bacallao; and the two kilograms Almaguer picked up on Bacallao's behalf. These separate amounts total 3,333.7 grams of cocaine. Based on this quantity, the PSI recommended a base offense level of 28, plus a two-point enhancement for obstruction of justice.

At sentencing, the district court found that a preponderance of the evidence supported the government's contention that Bacallao was involved with 3.3 kilograms of cocaine. The district court did not make any explicit findings, however, as to how the cocaine other than the 75.1 grams found in or near Bacallao's car constituted relevant conduct. The district court then sentenced Bacallao to 168 months' imprisonment.

On appeal, Bacallao argues that the cocaine other than the 75.1 grams found in or

near his car should not have been used to calculate his sentence because the other quantities of drugs were not "part of the same course of conduct or common scheme or plan," as required by U.S.S.G. § 1B1.3(a)(2).[1]

## II. Analysis

"A district court's calculation of the quantity of drugs involved in an offense is a finding of fact to be reversed only for clear error." *United States v. McClinton*, 135 F.3d 1178, 1192 (7th Cir.1998), *petition for cert. filed* (May 6, 1998). In calculating a defendant's base offense level under the Sentencing Guidelines, "the sentencing court must consider types and quantities of drugs not specified in the counts of conviction but that were 'part of the same course of conduct or common scheme or plan' as the convicted offenses." *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir.1994) (citations omitted) (quoting U.S.S.G. § 1B1.3(a)(2)); *United States v. Acosta*, 85 F.3d 275, 279 (7th Cir. 1996). This "relevant conduct" or "aggregation rule" permits sentencing courts to consider quantities of drugs not specified in the counts of conviction, provided "the unconvicted activities bore the necessary relation to the convicted offense." *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991). Two or more offenses are part of a common scheme or plan if they are connected by at least one common factor, such as "common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3(a)(2), Application Note 9. Offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." *Id.* In assessing whether offenses are part of the same course of conduct, courts looked to "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity.'" *Acosta*, 85 F.3d at 281 (citations omitted). Moreover, "section 1B1.3(a)(2) must not be read to encompass

---

1. Bacallao does not challenge on appeal the district court's finding that the 258.6 grams of cocaine found at Saunders' place of business properly were part of the same course of conduct or common scheme or plan as the convicted offense. We therefore will not disturb this finding.

any offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense." *United States v. Patel,* 131 F.3d 1195, 1204 (7th Cir.1997).

This court has ruled that when a district court, for purposes of calculating a defendant's base offense level, aggregates drug quantities arising from uncharged or unconvicted relevant conduct, the court should "explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *Duarte,* 950 F.2d at 1263; *see also Acosta,* 85 F.3d at 280. However, where it is clear that the district court took into consideration and adopted the facts contained in the presentence report, as well as the government's reasoning concerning those facts, we have upheld the court's decision to handle the uncharged conduct as relevant conduct, despite the lack of express findings. *Acosta,* 85 F.3d at 280. In this case, although the district court judge did not make any express findings of relevant conduct, she stated at the sentencing hearing that she was adopting the guideline calculations contained in the PSI, "taking into account only those acts and omissions [she found] were part of the same course of conduct or common scheme as the offense of conviction." From this statement, we may infer that the district court adopted the facts contained in the PSI and the government's reasoning concerning these facts.

 Bacallao first challenges the district court's inclusion of the one kilogram of cocaine Saunders arranged to purchase on Bacallao's behalf. Bacallao contends that there is no similarity, regularity, or temporal proximity between this transaction and the charged offense.[2] In fact, the details regarding this transaction are few and come exclusively from Saunders via Agent Paulson. According to Paulson, Saunders told him that on two separate occasions, Bacallao asked him (Saunders) to obtain cocaine from a contact Saunders had in Texas. The first occasion, which took place sometime in 1996, yielded the kilogram of cocaine at issue. The second occasion, in which Bacallao gave Saunders $30,000 for two kilograms of cocaine, was unsuccessful and led to an altercation between Bacallao and the Texas contact, a man named Jim Warren. Police records verified that a confrontation occurred in Platteville, Wisconsin between Saunders, Bacallao, and Warren after Bacallao recognized Warren's car.

Neither the PSI nor the sentencing hearing testimony explain how this event constitutes relevant conduct. As Bacallao points out, nothing in the record indicates when in 1996 this purchase occurred. The offense could have occurred as early as January of 1996—which is 18 months before Bacallao's arrest. *See United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993) ("[W]e must be cautious and exacting in permitting ... relatively stale dealings to be included in the same course of conduct as the offense of conviction."). Nor does the record provide any facts showing geographic proximity. We do not know where or how Bacallao took possession of the cocaine. There is no explanation indicating how the alleged purchase involved the same purpose or *modus operandi* as the convicted offense. Although the information gains reliability due to a police report verifying the existence of an altercation involving Bacallao, Saunders, and Warren, this police report involves an incident separate from the one being used to enhance Bacallao's sentence. In sum, the only ele-

---

**2.** The government argues that Bacallao must produce more than a bare denial of the facts contained in the PSI and that Bacallao's failure to do so permits the district court to rely entirely on the PSI. *United States v. Mustread,* 42 F.3d 1097, 1101–02 (7th Cir.1994). The reasoning of *Mustread* is largely applicable, however, "when the facts alleged in a presentence report are shown to bear 'sufficient indicia of reliability to support [their] probable accuracy.' " *Acosta,* 85 F.3d at 283 (citing U.S.S.G. § 6A1.3(a)). Where indicia of reliability are lacking, such as where the facts in the PSI are contradictory or inconsistent, or the PSI contains nothing but naked or unsupported charges, the defendant is not required to produce evidence showing how the facts are inaccurate. To the contrary, the government "bears the responsibility of producing some evidence from which the district court may make a reliable estimate of the quantity of cocaine that should be attributed to [the defendant] for purposes of determining his sentence" before the defendant is required to come forward with evidence refuting the PSI. *Id.*

ment connecting this offense to the offense of conviction is the relationship between Bacallao and Saunders.

The same lack of specific information affects the inclusion as relevant conduct of the two kilograms Almaguer claimed to have retrieved on Bacallao's behalf from Lydia in Chicago. The only specific testimony regarding this incident came from Almaguer via Agent Paulson. According to Paulson, Almaguer told him that in November or December of 1996, Bacallao asked him (Almaguer) to pick up two kilograms of cocaine from Lydia, to deliver one kilogram to Eddie Rodriguez in Rockford, Illinois, and to deliver the remaining kilogram to Bacallao. The police were not able to verify this information other than to identify a person whom they believed to be Lydia. However, Bacallao's ex-wife testified that Eddie Rodriguez and her husband worked together to sell drugs and that Lydia supplied her husband with cocaine. And George Moffett testified that Bacallao told him he could "dump a [kilogram of cocaine] a week in Madison with the help of Robert Almaguer and his nephew Roberto Valdes."

While the reliability of this information is heightened by the corroboration of three independent persons, it is unclear how this transaction relates to the charged offense. This purchase occurred some six or seven months before Bacallao's arrest and involved completely different accomplices: Almaguer, Rodriguez, and Lydia. Moreover, the paucity of facts regarding the manner in which this transaction took place makes it difficult to assess whether this event involved the same *modus operandi* as the convicted offense. There is no information in the record explaining where Bacallao was when he took possession of the cocaine or what he did with it afterwards. Also, while the PSI recites a number of incidents involving drug transactions, the district court did not sufficiently delineate those that were closely tied to the offense of conviction.

In *Duarte*, we noted that the aggregation rule "grants the government a fearsome tool in drug cases. It permits prosecutors to 'indict defendants on relatively minor offenses and then seek enhanced sentences later by asserting that the defendant has committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted.'" 950 F.2d at 1263 (quoting *United States v. Fischer*, 905 F.2d 140, 142 (7th Cir.1990)). Accordingly, before we allow defendants to serve enhanced sentences based on conduct that the government, for one reason or another, did not see fit to include either in its indictment or its plea agreement, we must be satisfied that the allegedly related conduct is, in fact, intertwined with the offense of conviction. Likewise, we again remind prosecutors "not to indict defendants on relatively minor offenses and then seek enhancement sentences later by asserting that the defendant has committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted." *United States v. Fischer*, 905 F.2d 140, 142 (7th Cir.1990).

In this case, we conclude that Bacallao's sentence does not comport with the aggregation rule. The district court made no independent findings regarding relevant conduct at sentencing but instead relied entirely on the information contained in the PSI to make its relevant conduct findings. Thus, for Bacallao's sentence to stand, the PSI must explain how the one- and two-kilogram purchases were part of the same course of conduct or common scheme or plan as the offense of conviction. The PSI fails, however, to establish the necessary relationship between the offense of conviction and Bacallao's participation in other drug transactions. Regarding the one-kilogram transaction, the PSI establishes only one common element between the charged offense and the one-kilogram transaction: the relationship between Saunders and Bacallao. This link is not enough, standing alone, to show that the transaction was part of the same course of conduct or common scheme or plan as the offense of conviction. The record contains no evidence establishing, for instance, relevant dates, common victims, or details concerning the manner in which the kilogram of cocaine was acquired and distributed. And the facts established in the PSI regarding the two-kilogram purchase likewise are insufficient to demonstrate relatedness to the charged offense: there are no directly evident common victims, accomplices, or goals,

and no *modus operandi* can be gleaned from the testimony of Almaguer, Barbara Rodriguez, and George Moffett. *See United States v. Crockett*, 82 F.3d 722, 730 (7th Cir.1996) ("The mere fact that the defendant has engaged in other drug transactions is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes."). Bacallao appears to have been involved in substantial drug activity over the years, but for any of that conduct to be relevant for sentencing purposes, the district court must make specific findings based on the standards set out above. As such, the district court placed too much reliance solely on the PSI to support its finding of relevant conduct and thereby failed to establish the requisite nexus between the 75.1 grams of cocaine found in or near Bacallao's car and the three kilograms of cocaine used to enhance his sentence. We therefore vacate Bacallao's sentence and remand for resentencing, at which time the government will have ample opportunity to prove that the one- and two-kilogram transactions are "relevant conduct" for sentencing purposes.

### III. Conclusion

For the foregoing reasons, Bacallao's sentence is VACATED and REMANDED for resentencing.