**UNITED STATES of America, Plaintiff–Appellee.**

**v.**

**Robert FLEMISTER, Defendant–Appellant.**

**No. 00–3392.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 2001.

Decided Oct. 11, 2001.

Before POSNER, EASTERBROOK, EVANS, Circuit Judges.

### ORDER

A jury found Robert Flemister and his associates guilty of conspiracy to distribute and possess with intent to distribute crack cocaine. 21 U.S.C. §§ 846 and 841(a)(1), and he was sentenced to 240 months' imprisonment and 3 years' supervised release. Flemister now appeals, claiming that: (1) there was insufficient evidence to support the district court's determination of drug quantity for sentencing purposes; (2) the district court erred in applying an upward adjustment for his role in the conspiracy; and (3) all elements of his sentence should have been submitted to the jury and proven beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We affirm.

During late 1997 and March 1998, Flemister and several associates traveled from Chicago to Madison to sell crack cocaine. Many of the Madison locals with whom defendant associated later testified as government witnesses at trial. In addition to general testimony regarding the defendants' drug operations in Madison, these witnesses also testified about Flemister's involvement in the conspiracy. Latashia Lightning testified that she saw Flemister with a baggie containing a "whole bunch of rocks .. and a bunch of smaller bags" that looked like a "big onion." She stated that Flemister had given the crack to men named Little Kenny and "Boo." Shuntia Holland also testified that he had seen Flemister give crack to Boo. According to Holland, Flemister had told him that Boo was holding the crack in Madison for Holland, and that he could sell some of the crack if he wished and split the proceeds with Flemister. Johnny Patterson testified that he purchased five baggies of crack from Flemister and that he had twice seen Flemister counting "a nice size" of cash in the building where drugs were dealt.

Police officers arrested Flemister in Chicago on October 21, 1999, and a detective from the Dane County, Wisconsin sheriff's office interviewed him. Flemister admitted that he was a "top soldier" in the Black Disciples street gang and that some of his associates in Madison reported to him. He stated that he and others had sold crack in Madison, that he personally witnessed many crack sales, and that he had seen his cohorts in possession of thousands of grams of crack during the period of time that they were selling in Madison. Flemister admitted that he brought approximately 60 grams of crack to Madison and that in Chicago he provided Boo with about 20 grams of crack, which Boo then took to Madison to sell. Flemister also participated in two more interviews as part of a proffer agreement. In the first interview, on November 2, 1999, Flemister stated that all of the named defendants were Black Disciples gang members, but claimed that he was not a leader within the gang. He said that he would sell crack in Madison for a week at a time, for a total of three and one-half weeks, and generally sold at least one "fifty-pack" each day. He

believed each bag of "rocks" was worth over $1000, and that he consistently handled large sums of money in Madison as a result of his drug trade. During the second proffer interview in December 1999. Flemister supplied additional detail regarding his work selling crack as a soldier in the Black Disciples, including the fact that he turned over much of the money he earned selling crack to higher-ups in the Black Disciple ranks.

The PSR recommended a relevant conduct amount of 1.5 kilograms of crack and a base offense level of 38. The probation officer also recommended a four-level upward adjustment for Flemister's purported leadership role in the conspiracy, as well adjustments for use of a person under age 18 to evade detection and weapons possession in furtherance of a drug conspiracy. Flemister submitted written objections to the PSR findings and recommendation. Specifically, he objected to the drug quantity calculation, arguing at the sentencing hearing that the largest quantity of drugs attributable to him was 80.2 grams, not 1.5 kilograms as the probation officer recommended. He also challenged the other proposed upward adjustments to his sentence.

After the jury verdict but before sentencing, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The district court ordered briefing on the issue of whether *Apprendi* would affect Flemister's sentence. Flemister argued that *Apprendi* controlled because the government did not allege any quantity of drugs in the indictment and the jury did not find drug quantity beyond a reasonable doubt. But Flemister did not assert that the district court's factual determinations under the sentencing guidelines should have been submitted to the jury and proven beyond a reasonable doubt. In a written opinion

entered the week before sentencing, the district court held that in light of *Apprendi*, Flemister's sentence must be capped at 20 years pursuant to 21 U.S.C. § 841(b)(1)(C).

At sentencing the district court adopted all of the probation officer's sentencing recommendations except for the upward adjustment for weapons possession. Flemister renewed his objections to the drug quantity calculation for relevant conduct purposes as well as to the proposed upward adjustments. Again, Flemister did not argue at the hearing that *Apprendi* required the district court's factual determinations for sentencing purposes to be proven beyond a reasonable doubt. The court placed Flemister's base offense level at 38, concluding that the government had shown by a preponderance of the evidence "that at least one and a half kilograms of crack cocaine was involved in this case." After factoring in the remaining upward adjustments for his leadership role and use of a minor, the district court concluded that Flemister was subject to a total offense level of 44 and a criminal history category of II, which required a sentencing range of life imprisonment under the guidelines. But because drug quantity had not been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt as required under *Apprendi*, the district court imposed a 20–year sentence followed by three years' supervised release. The judgment of conviction and commitment was entered on September 5, 2000, and a timely notice of appeal was filed on September 11.

Flemister argues that the district court improperly sentenced him under the guidelines because its factual determinations were not adequately supported by the evidence. He also claims that the district court erred by imposing an upward adjustment for his role in the conspiracy.

Finally, Flemister insists that *Apprendi* requires all factual determinations under the sentencing guidelines to be proven beyond a reasonable doubt.

■ We review for clear error district court factual findings regarding drug quantities and determinations of relevant conduct under the guidelines. *United States v. Galbraith*, 200 F.3d 1006, 1011 (7th Cir.2000). The government need only prove the quantity of drugs for sentencing by a preponderance of the evidence, but the information on which the district court relies must have sufficient indicia of reliability. *Id.* at 1011–12. So although the trial court could, for example, credit uncorroborated testimony "from an admitted liar, convicted felon, large scale drug-dealing paid government informant," if there is inconsistent evidence, the trial court nevertheless must make a "sufficiently searching inquiry" into the government's evidence to ensure its accuracy. *Id.* at 1012; *see United States v. McEntire*, 153 F.3d 424, 436 (7th Cir.1998).

■ When determining a sentencing range, the guidelines require that a sentencing court include as relevant conduct all acts that were part of the same course of conduct or common scheme or plan as the convicted offense, regardless of whether the defendant was convicted of the offenses pertaining to the additional amounts. *United States v. Watts*, 519 U.S. 148, 153, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir.1996). Two or more offenses are part of a common scheme or plan when they are substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose or similar *modus operandi*. *Id.* In determining commonality, the sentencing court must consider such factors as the nature of the defendant's role and acts, the number and frequency of repetitions of those acts, and whether those acts indicate a behavior pattern. *Id.*

■ When the defendant was a member of a conspiracy, as is the case here, relevant conduct is determined by reference "to all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §§ 1B1.3(a)(1)(A)-(B). A defendant's relevant conduct, however, does not include:

> the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level).

*Id.* § 1B1.3. comment (n.2). Relevant conduct for purposes of sentencing is not necessarily the same for every participant in the conspiracy. Thus the sentencing court must ask: (1) when the defendant joined the conspiracy; (2) whether the conduct considered for sentencing purposes was in furtherance of the jointly undertaken criminal activity; and (3) whether that conduct was reasonably foreseeable by the defendant. *United States v. Albarran*, 233 F.3d 972, 980 (7th Cir.2000); *United States v. Flores*, 5 F.3d 1070, 1083 (7th Cir.1993) ("Reasonable foreseeability refers to the scope of the agreement that [the defendant] entered into when he joined the conspiracy, not merely to the drugs he may have known about.").

Moreover, when a district court aggregates drug quantities arising from charged or uncharged relevant conduct, it should explicitly state and support its finding that the uncharged activities bore the necessary relation to the convicted offense. *See United States v. Sumner*, 265 F.3d 532, 539 (7th Cir.2001) (citing *United States v. Bacallao*, 149 F.3d 717, 720 (7th Cir.1998)). And even if the district court relies on and adopts the facts contained within the PSR to determine relevant conduct, the PSR must explain how the purported relevant conduct is part of the same course of conduct or common scheme or plan as the offense of conviction. *Bacallao*, 149 F.3d at 721. We have upheld the sentencing court's decision to treat uncharged acts as relevant conduct even in the absence of express findings when the PSR adequately explained the connection. *Id.* at 720.

Here the sentencing court, relying on the PSR, held Flemister responsible for 1.5 kilograms of crack as relevant conduct. This amount was based on Flemister's own post-arrest statement, as well as the evidence at trial. Flemister told police that he saw a codefendant selling crack at least twenty times and that he saw another codefendant with four or five grams of crack at any given time. Flemister admitted that he had seen one confederate with $25,000 in crack and another with a "half a kilo" of crack. The PSR also notes that other defendants and government witnesses confirmed the large amounts of crack involved in the conspiracy.

Although Flemister argues on appeal that the relevant conduct amount encompasses quantities of crack sold before he arrived in Madison in January 1998, and is the result of unreliable testimony from drug-dealing and drug-using government witnesses, these arguments are not sufficient to sustain a finding that the district court clearly erred. As noted above, "status as a government witness and alleged drug dealer does not sufficiently import bias so as to undermine the reliability of [the] testimony." *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir.2000). And even if these witnesses were completely incredible, Flemister's own statements provide ample evidence of when Flemister joined the conspiracy, the scope of his involvement, his knowledge of coconspirators' acts, and the appropriate drug-quantity calculation.

Flemister next claims that the district court erred when it increased his total offense level four points for being a "leader" under U.S.S.G. § 3B1.1 because "the testimony presented at trial was more consistent with a finding that there was not an organized group, but rather that there was a loose band of individuals selling cocaine." The applicability of § 3B1.1 is a question of fact that we review for clear error. *United States v. Vivit*, 214 F.3d 908, 922 (7th Cir.2000). Guideline § 3B1.1(a) permits a four-level upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. This means that the defendant "may simply have organized or in some way directed" another member of the conspiracy. *United States v. Mustread*, 42 F.3d 1097, 1104 (7th Cir.1994). We have held that an upward adjustment under § 3B1.1 is warranted for each leader in the conspiracy, *see, e.g., United States v. McClinton*, 135 F.3d 1178, 1191 (7th Cir.1998); *United States v. Miller*, 962 F.2d 739, 745 (7th Cir.1992), and the sentencing guidelines recognize that more than one person may qualify as a leader or organizer, *see* U.S.S.G. § 3B1.1(a), comment (n.4); *see also United States v. Golden*, 954 F.2d 1413, 1419 (7th Cir.1992).

█ In this case the record amply supports the district court's finding that Flemister was a leader within the conspiracy. In his post-arrest statement, Flemister boasted that he and codefendant Tyrae Ford were Black Disciples "of rank" and that he was a "top soldier." Flemister noted that he was "over" Ford in terms of rank. Government witness Shuntia Holland testified that Flemister was a "minister" in the Black Disciples. Flemister also told police that Boo acted at his instruction. Several witnesses saw other coconspirators handing money to Flemister and obtaining crack to sell from him. Latashia Lightning, another witness, testified that Flemister ordered her to hold crack for him. The record demonstrates that Flemister played an active role in the drug-distribution scheme and supports the district court's conclusion that he was a leader or organizer in the conspiracy.

█ Finally, Flemister argues that the district court's factual determinations on drug quantity, use of a minor, and leadership role should have been submitted to the jury and proven beyond a reasonable doubt. As an initial matter, the government contends that Flemister had the opportunity to, but affirmatively did not, raise this issue below, and thus waived it for purposes of appeal. Flemister responds that he did preserve the issue for appeal by raising *Apprendi* claims before and during sentencing, or at worst forfeited the issue, which would permit plain error review. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As we have noted many times, waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of the right. *See United States v. Staples*, 202 F.3d 992, 995 (7th Cir.2000). "Where waiver is accomplished by intent, forfeiture comes about through neglect."

*Id.* at 995; *see also United States v. Cooper*, 243 F.3d 411, 416 (7th Cir.2001) ("forfeiture is an accidental or negligent omission" while waiver is the "manifestation of an intentional choice no to assert the right"). It is true that Flemister did not argue below that all sentencing factors must be proven beyond a reasonable doubt, but he did raise *Apprendi* claims with respect to his sentence. There is no evidence on the record before this court that Flemister intentionally wished to relinquish his right to raise *Apprendi* claims on appeal, and because we construe waiver principles liberally in favor of the defendant, *see United States v. Perry*, 223 F.3d 431, 433 (7th Cir.2000), we conclude that Flemister's lapse was mere forfeiture and should be reviewed for plain error.

█ Regardless, Flemister's argument fails under plain error review because he can show neither legal error nor deprivation of his substantial rights. *Olano*, 507 U.S. at 731, 113 S.Ct. 1770. First, *Apprendi* does not affect the application of the sentencing guidelines' relevant conduct rules to sentences that do not exceed that statutory maximum penalty for that crime. *See, e.g., United States v. Robinson*, 250 F.3d 527, 529 (7th Cir.2001) (*Apprendi* is irrelevant when defendant's sentence does not exceed the 20–year maximum under § 841(b)); *Jones*, 245 F.3d at 650–51. In this case the district court recognized *Apprendi's* applicability and capped Flemister's sentence at the 20–year default statutory maximum under 21 U.S.C. § 841(b)(1)(C). And we have emphasized time and again that *Apprendi* does not control other sentencing determinations such as role in the offense and other upward adjustments. *See Robinson*, 250 F.3d at 531; *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir.2000); *Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir.2000) (*Apprendi* governs "ele-

ments of the offense" and not "sentencing factors").

AFFIRMED.