**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ray Anthony PUGH, Defendant–
Appellant.**

No. 01–3172.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 29, 2002.

Decided June 13, 2002.

Before COFFEY, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

On March 18, 2001, when the Carbondale, Illinois, police officers arrested Ray Pugh on an outstanding arrest warrant they discovered 6.5 grams of crack cocaine in his car. Pugh later pleaded guilty to possessing more than five grams of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B) and was sentenced to 235 months' imprisonment. On appeal he challenges the court's determination of his relevant conduct and the court's refusal to give him a downward adjustment for acceptance of responsibility. We affirm.

## BACKGROUND

Carbondale, Illinois law enforcement officers arrested Pugh on March 18, 2001. Earlier that morning at around 2:30 a.m. the officers spotted Pugh's Ford Thunderbird and followed it into a fast-food restaurant's parking lot. After parking in the lot, the officers ran a check on the vehicle registration plate and learned that he was wanted on an outstanding arrest warrant. Upon learning of the arrest warrant, the officers approached Pugh's vehicle and placed him under arrest. After taking the defendant into custody, the officers searched his car and discovered a plastic bag containing 55 "rocks" of crack cocaine, weighing 6.5 grams.

Pugh was indicted by a grand jury and entered a plea of guilty to possessing more than five grams of cocaine base with intent to distribute. Even though there was no written plea agreement on file, the court advised Pugh during a plea hearing, among other things, that any relevant conduct might increase the amount of drugs for which he was held responsible in the indictment.

The relevant conduct computed in Pugh's Pre–Sentence Report (PSR) recited other drug deals the defendant participated in, which in turn dramatically increased the amount of drugs attributed to him; raising the drug amount from 6.5 grams of crack to 1,099 grams of crack and 1,022 grams of powder cocaine. In reaching this figure, the PSR relied on the statements of three witnesses: (1) Ernest Taylor, who stated in a 1998 proffer interview that he and Pugh bought crack together several times and that he observed Pugh buying one to three ounces of crack and powder cocaine each time (for a total of 42 grams of powder and 112 grams of crack); (2) Lavell Johnson, who stated in a 2001 interview that he "cooked" cocaine into crack for Pugh in 1997 and 1998 and that he made more than 25 crack-buying trips with Pugh to Blytheville, Arkansas; Sikeston and Charleston, Missouri; and Decatur, Illinois (for a total of 980 grams of powder and 840 grams of crack); and (3) Nikita Spencer, who in a March 2001 interview with police claimed to have made a crack-buying trip to Arkansas in 1998 with Pugh and to have seen Pugh buying crack and marijuana (for a total of 42 grams of crack). Pugh questioned the reliability of these witnesses in objections filed prior to the sentencing hearing concerning the relevant conduct determination in the PSR. In those objections, he also argued that the uncharged conduct was not relevant to his charged conduct.

At sentencing, the government called three witnesses to testify regarding Pugh's relevant conduct: Spencer, Johnson, and Robert Dueker, who is the former head of the FBI's Carbondale office and was called to testify regarding Taylor's statements. On cross-examination and in his argument to the court, Pugh reiterated that the witnesses were unreliable and that the conduct they described was not relevant to his charged conduct. After hearing the witnesses' testimony and listening to the arguments of counsel, the sentencing court adopted the PSR's position and determined that the uncharged conduct described by the witnesses was relevant as part of a common scheme or plan with the charged conduct, and found Pugh responsible for 500 to 1,500 grams of cocaine base.

Pugh's PSR recommended a two-level downward adjustment for acceptance of responsibility, based on the fact that Pugh pleaded guilty before trial. The court further reasoned that Pugh's refusal to accept responsibility for 500–plus grams of crack amounted to a false and "frivolous" denial of his relevant conduct. The sentencing judge declined to make a downward adjustment. Pugh's resulting offense level of 36 and criminal history category of III yielded a range of 235–293 months' imprisonment. The court sentenced Pugh to 235 months' imprisonment, to be followed by four years' supervised release, and a $3,500 fine.

## DISCUSSION

### I. Relevant conduct

On appeal Pugh initially argues that the district court clearly erred by finding that the prior uncharged drug transactions were relevant conduct as part of a "common scheme or plan" with his charged offense. U.S.S.G. § 1B1.3(a)(2).

To show that uncharged conduct is relevant for sentencing as part of a common scheme or plan with the charged conduct, the government must demonstrate that the charged and uncharged acts are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *United States v. Acosta,* 85 F.3d 275, 281 (7th Cir.1996) (quoting U.S.S.G. § 1B1.3(a)(2), comment. (n.9)). The government must prove the common scheme or plan, as well as the amount of drugs involved in that common scheme, by a preponderance of the evidence. *See United States v. Zehm,* 217 F.3d 506, 511 (7th Cir.2000).

■ Pugh compares his situation to that of the defendant in *United States v. Bacallao,* 149 F.3d 717, 720 (7th Cir.1998), where we vacated the defendant's sentence, holding that the government failed to establish how two prior cocaine transactions were part of 1) the same course of conduct; or 2) a common scheme or plan. *Id.* The PSR in that case failed to establish relevant dates, common victims, or details concerning how the cocaine was acquired and distributed in one prior transaction. *Id.* In addition, the information about the other prior transaction failed to establish common victims, accomplices, or goals with the conduct charged in the indictment and proved at trial. *Id.* In contrast to *Bacallao,* the government here provided specific information about the timing and location of Pugh's transactions. Pugh's PSR described numerous drug sales that he had engaged in between 1995 and 2001, with all sales occurring in the Carbondale, Illinois,

area, and with a similar *modus operandi* of crack being purchased in large quantities outside Carbondale for sale in Carbondale. After review of the record we are convinced that the trial court did not commit clear error when finding that the government proved a common scheme or plan.[1]

In order to facilitate appellate review, we have requested and advised trial judges to make a complete record by explicitly "stat[ing] and support[ing] ... findings that the unconvicted activities bore the necessary relation to the convicted offense." *Bacallao,* 149 F.3d at 720. We have, however, held that where a district judge adopts the facts in the PSR, we may infer that the court also adopted the government's reasoning about those facts. *See id.* After review, we are convinced that it is appropriate for us to draw such an inference and hold that the sentencing judge has adequately explained and supported his findings.

■ Pugh also attacks the reliability of the evidence offered in support of his relevant conduct, arguing that the statements and testimony of Spencer, Johnson, and Taylor were contradictory. Defendants have a due process right to be sentenced on the basis of information with "sufficient indicia of reliability." *See Zehm,* 217 F.3d at 514. A key component of reliability is consistency of facts and details. *Id.* A sentencing court's credibility determinations receive "exceptional deference" on appeal, *United States v. Johnson,* 227 F.3d 807, 813 (7th Cir.2000), but we also wish to make clear that when witnesses give inconsistent testimony concerning a defendant's

---

**1.** Although the government established a common scheme, we find it *necessary to caution prosecutors once more against the very suspect and questionable practice* of indicting without a detailed reason on relatively minor crimes and later "seek[ing] enhanced sentences ... asserting that the defendant has

committed other more serious crimes for which, for whatever reason, the defendant was not prosecuted and has not been convicted." *Bacallao,* 149 F.3d at 721 (quoting *United States v. Fischer,* 905 F.2d 140, 142 (7th Cir.1990)).

past history of drug transactions, the trial judge must "provide an explanation for crediting one of the witnesses' inconsistent statements over the others," *Zehm*, 217 F.3d at 514. The district court adopted the PSR, including its assessments of the reliability of all three witnesses and addressed many of the contradictions cited by Pugh in his brief. For example, Pugh noted that in a November 1998 interview Taylor said that he and Johnson bought crack from a person named "Fatty" every few days, while in a January 1999 proffer Taylor told police that he and Pugh purchased crack from Fatty only four times. In a response to Pugh's objections to the PSR, the probation officer made clear that he credited Taylor's statement because of the level of detail he provided in his proffer when detailing the drug amounts as well as the transaction dates, and also because the interviews with Pugh's drug customers proved to be most helpful in corroborating Taylor's statement that the two men had worked together in 1996–1997. The trial judge's acceptance of the probation officer's explanation was not clearly erroneous. *See Johnson*, 227 F.3d at 813 (sentencing court's credibility determinations receive "exceptional deference"). Pugh also challenged a discrepancy between Johnson's interview statement that Taylor worked with Pugh in 1998 and Taylor's own statement that he stopped working with Pugh in 1997. The PSR resolved the problem by explaining that Johnson in fact said that Taylor worked with Pugh until January 1998. We are convinced that the probation officer's opinion was well-supported and based upon a most thorough investigation and sound reasoning.

In addition to adopting the PSR, the district court at sentencing also addressed the question of Johnson's reliability. The court found that Johnson's longstanding friendship both with Pugh and Pugh's family made it unlikely that Johnson would exaggerate Pugh's criminal culpability. As for Taylor's reliability, the court relied upon Dueker's testimony that Taylor's statements corroborated other information obtained by police and that Taylor was a close friend of Pugh's with much less motive to falsely implicate him in criminal activity. The court then commented that Dueker's experience and "track record" suggested that Dueker's assessment of Taylor was proper. We are of the opinion that his adoption of the PSR as well as his limited findings at sentencing were sufficient to satisfy due process.

■ Pugh's next argument is that his due process rights were violated by the court's admission of Dueker's hearsay testimony about Taylor's statements during sentencing. We have held that a sentencing judge may consider a wide variety of information in making sentencing decisions, including hearsay:

> The testimony of the witnesses was based on personal investigation and observation, not some cold antiseptic record, and could certainly be deemed reliable by the district court. And although Torres suggests that Irizarry's testimony was based primarily on hearsay, and therefore was inadequate to prove the prior acts by a preponderance of the evidence, it is patently clear that hearsay evidence is admissible at sentencing hearings. Fed. R.Evid. 1101(d)(3); 18 U.S.C. § 3661; *see also United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) ("a [sentencing] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."); *United States v. Harty*, 930 F.2d 1257, 1268 (7th Cir.1991). Indeed, this court recently reiterated that "a sentencing judge is free to

consider a wide variety of information that would be inadmissible at trial, including hearsay." *United States v. Beal,* 960 F.2d 629, 634 (7th Cir.1992) (internal quotation marks omitted). It is both necessary and proper to take account of pertinent information regarding the defendant's past. "It [is] clear that a sentencing judge can and must consider a defendant's entire history in order that he might make an informed decision as to the proper punishment." *United States v. Coonce,* 961 F.2d 1268, 1275 (7th Cir.1992), citing *United States v. Madison,* 689 F.2d 1300, 1314–15 (7th Cir.1982). *United States v. Torres,* 977 F.2d 321, 330 (7th Cir.1992). The court tested the reliability of Dueker's information by questioning him about it. Dueker answered that Taylor's statements were corroborated with proof of the undercover drug purchases made from Taylor's associates. Dueker also believed that Taylor's statements were reliable because he did not believe that Taylor would describe criminal conduct by either himself or his friend Pugh unless they had actually participated in those violations of the law. In finding Dueker's testimony reliable, the court commented that Dueker is "invariably right," but again should have explained its reasoning more thoroughly. Based upon the record, we are convinced that Dueker's testimony contained sufficient indicia of reliability to justify the court's reliance on it.

Pugh also contests the admissibility of Spencer's testimony. During Spencer's testimony, Pugh's counsel requested the government to turn over a copy of Spencer's plea agreement, but the prosecutor was unable to comply because she did not have a copy of the document at the hearing. Pugh argues that the government's failure to provide him with a copy of Spencer's plea agreement violated Rule 26.2 of the Federal Rules of Criminal Procedure and that Spencer's testimony therefore should have stricken from the record. Rule 26.2 requires the trial judge to strike a witness' testimony where the government "elects not to comply with an order to deliver a statement to the moving party." Fed.R.Crim.P. 26.2(e). But the court never ordered the government to provide a copy Pugh's counsel with a copy of the plea agreement. Furthermore, the record reflects that Pugh never formally moved for the production of the statement as required by Rule 26.2(a) ("[T]he court, *on motion of a party who did not call the witness,* shall order the attorney for the government . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified"); *see also United States v. Johnson,* 200 F.3d 529, 534 (7th Cir.2000). Rule 26.2 thus does not apply and the district court correctly denied Pugh's motion to strike Spencer's testimony.

## II. Acceptance of Responsibility

■ Pugh's final argument is that the trial court erred when it decided not to give him a two-level downward adjustment in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Pugh's PSR recommended a two-level adjustment for acceptance of responsibility because of his entry of a plea of guilty before trial. The court refused to give a downward adjustment because it found that Pugh falsely and frivolously denied responsibility for the 500–1,500 grams of crack—the amount for which the court ultimately found him responsible. Pugh argues that his denial was not false and frivolous, but instead was based on a good-faith belief that much of the conduct attributed to him was not relevant to the charged offense. We review a court's find-

ing as to whether a defendant accepted responsibility for clear error, *see Zehm*, 217 F.3d at 515, and give great deference to a sentencing judge's evaluation of whether a defendant has accepted responsibility, *see United States v. Booker*, 248 F.3d 683, 690 (7th Cir.2001). False denial of relevant conduct may be a basis for denying a reduction in offense level for acceptance of responsibility. *See Zehm*, 217 F.3d at 515. Based upon our review, we are convinced that the district court's assessment of Pugh's denial of relevant conduct was not clearly erroneous.

### III. *Apprendi*

Pugh briefly argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). But because Pugh's sentence was less than the statutory maximum, *Apprendi* does not apply. *See United States v. Williams*, 238 F.3d 871, 877 (7th Cir.2001).

AFFIRMED