NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2013
Decided June 13, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1640

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 08-CR-164-C-01 |
| TREVOR K. RYAN, *Defendant-Appellant*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Trevor Ryan flew a plane which contained roughly 70 kilograms of marijuana from California to an unmanned airport in rural Wisconsin. The police were waiting for him. He was ultimately convicted of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), and sentenced to 65 months' imprisonment. Ryan argues that at sentencing the district court erred by counting as relevant conduct the marijuana and guns discovered in a raid of his Los Angeles home nine months earlier and by failing to explain its relevant conduct finding. We affirm Ryan's sentence because the record supports the existence of a

single, ongoing drug operation and the district court's explanation of its relevant conduct finding is adequate.

Ryan first came to the attention of law enforcement in January 2008, when he was 28 years old. The Los Angeles Police Department had been alerted to excessive power usage at a residence across the street from Ryan's home in the Granada Hills neighborhood. After discovering a large, indoor marijuana-growing operation at that address, investigators reviewed the power records of other homes in the area and obtained a search warrant for Ryan's $800,000 home based on its unusually high usage. They discovered a marijuana-growing operation in his garage, complete with grow lights, an irrigation system, and a carbon-dioxide generator. They recovered 98 marijuana plants, 8.39 kilograms of dried marijuana, and 3.18 kilograms of concentrated cannabis. Inside the home they found three handguns, three shotguns, an AR-15 semiautomatic rifle, ammunition, and a night-vision scope. They also found drug ledgers, articles of incorporation from 2005 for The Healing Collective (a "medicinal herbs wholesale business" for which Ryan was president), aircraft brochures, a pilot's logbook, and Ryan's deed to the house.

A California Department of Justice task force continued investigating Ryan, but no charges had been filed as of October 2008. That month an agent from Immigration and Customs Enforcement learned that a 1962 twin-engine Piper Aztec recently purchased by Ryan (on eBay for $55,990 in cash) was suspected of being used to transport marijuana. On October 18 the agent alerted federal authorities in Wisconsin that Ryan had filed a flight plan indicating that he would fly from Ukiah, California, to Wisconsin that night. Agents convened at the Dane County Regional Airport to await Ryan's arrival, but when they learned that he had been granted permission to land instead at an unmanned airport in Iowa County, they enlisted local law enforcement officers, who apprehended Ryan. A search of Ryan's plane revealed 71.42 kilograms of marijuana with a street value of nearly $500,000. Three days later, authorities recovered another 2.27 kilograms of marijuana and 114 marijuana plants from a $425,000 40-acre rural property that Ryan owned in Ukiah, about 450 miles north of his Los Angeles home.

Ryan pleaded guilty to a single count of possession with intent to distribute. The probation officer who drafted the presentence report assigned a base offense level of 26, *see* U.S.S.G. § 2D1.1(c)(7), after concluding that Ryan's relevant conduct included all of the marijuana recovered from the airplane as well as the marijuana from his two California properties for a total of 106.46 kilograms. The probation officer also applied a two-level upward adjustment, *see id.* § 2D1.1(b)(1), based on the firearms found in Ryan's home. In addition to calculating Ryan's guidelines sentence, the probation officer related that Ryan graduated from Ithaca College in 2003, after which he moved to Los Angeles where he worked as a production assistant for four years making $29,000 a year. The probation officer

further reported that Ryan had claimed to make $50,000 annually as president of The Healing Collective since beginning the business in 2005.

Ryan's attorney objected to the guidelines calculations claiming that the marijuana recovered from Ryan's properties in California was grown legally in Ryan's capacity as a "compassionate care provider" under the state's Medical Marijuana Program Act, CAL. HEALTH & SAFETY CODE §§ 11362.7–11362.83, and was not relevant conduct to his illegal interstate sales. Nor was the firearms adjustment warranted, counsel argued, because Ryan was a lifelong hunter and gun collector and kept the weapons unloaded in a locked case apart from his "legal marijuana grow operation."

The district court rejected Ryan's arguments. After hearing the government's argument that Ryan's illegal marijuana cultivation must have been ongoing because "he didn't get this 150 pounds of marijuana that we recovered from his plane over night," the court stated that it was "prepared to find that the probation office made the correct determination of the amount of marijuana and that the amount found at the two residences should be included because it's all part of the same course of conduct or relevant scheme." The district court also disagreed with Ryan's contention that his marijuana grow was legal because the amount of marijuana plants and dried marijuana involved greatly exceeded the limits proscribed by California law. The court further concluded that Ryan had failed to show that it was clearly improbable that he possessed his firearms to protect his marijuana operation. In addressing Ryan's arguments in mitigation, the court emphasized that the sophisticated nature of his drug operation, describing Ryan's conduct as "a whole business you were engaged in" and "a major criminal operation with enormous investments and time and energy and resources, with the purchase of two pieces of property, expensive property, the purchase of a plane." The district court sentenced Ryan to a term of imprisonment below his guidelines range of 70 to 87 months, reasoning that 65 months was sufficient in light of his otherwise clean criminal record.

On appeal, with new counsel, Ryan recasts the sentencing arguments he made in the district court. No longer does he dispute that the marijuana found in Ukiah should be counted as relevant conduct (presumably because his flight to Wisconsin originated from there). And no longer does Ryan press the argument that his marijuana and guns found in the Granada Hills home should not have been counted as relevant conduct on the grounds that he was growing the marijuana "legally" and had the guns for hunting. Rather, he argues that the connection between the January 2008 raid in Los Angeles and his October 2008 arrest in Wisconsin is too tenuous to support a finding that the drugs and guns found in that raid are relevant to his conviction. He maintains that his California marijuana sales were focused on the "local medical marijuana scene," and that the distance and time

separating the January 2008 raid from his Wisconsin arrest require a finding that the two events involved discrete courses of conduct.

In a drug case, a district court may increase a defendant's sentence on the basis of past, uncharged transactions if those transactions are related to the offense of conviction by similarity, regularity, and temporal proximity. *United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009); *United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008). We have noted that a significant temporal gap may be overcome by a stronger showing regarding the regularity and similarity of acts. *See United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005); *United States v. Sumner*, 265 F.3d 532, 541 (7th Cir. 2001); *United States v. Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999). Moreover, a gap in time will not be fatal to a finding of relevant conduct if the interruption resulted from factors other than the defendant's own volition. *See Ruiz*, 178 F.3d at 882 (noting that gap in cocaine sales while defendant was incarcerated or without a supplier would not signify end of course of conduct).

In light of these considerations, we see no clear error in the district court's conclusion that the marijuana recovered in the Granada Hills raid was relevant to Ryan's conviction. In both instances, Ryan grew kilogram quantities of marijuana for distribution. *See United States v. McGowan*, 478 F.3d 800, 802 (7th Cir. 2007) (considering quantities involved in past drug sales in determining whether uncharged conduct was similar to offense of conviction); *United States v. Ortiz*, 431 F.3d 1035, 1042 (7th Cir. 2005) (same). The fact that he went on to expand his operations to a broader, national market does not insulate his Granada Hills operation from a relevant-conduct finding. Moreover, although there was a nine-month gap between the *seizures of marijuana* from Ryan in Los Angeles and then Wisconsin, that does not mean his *drug operation* stopped, or even slowed down, during that period. Instead, it continued unabated from January 2008 until October 2008 despite the intervention of law enforcement. Ryan suffered a setback when police raided his Granada Hills home in January, but that did not stop him from growing marijuana in Ukiah. Nor did the January raid alter his plans to purchase a plane to smuggle marijuana. As the presentence report notes, aircraft brochures and a pilot's logbook were found during the January 2008 raid, suggesting that Ryan already was planning to expand his operation. By March he had found the plane he wanted and made the initial payment; according to the seller, Ryan was most interested in cargo capacity, fuel capacity, and the aircraft's ability to make short-field landings. He did not even have a pilot's license when he invested in the aircraft, and yet by the end of April he had paid the entire $55,990 purchase price in cash despite making (by his own account) just $50,000 in legitimate income annually. In short, Ryan did nothing to halt his drug operation after the January raid in Los Angeles.

Ryan further contends that, even if there is sufficient evidence to support the district court's relevant-conduct finding, the district court erred by failing to cite specific evidence

supporting its conclusion that the marijuana and guns discovered in Granada Hills were related to the offense of conviction.

We generally require district courts to state explicitly which findings tie drug quantities from unconvicted conduct to the offense of conviction. *See United States v. Locke*, 643 F.3d 235, 245 (7th Cir. 2011); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 726 (7th Cir. 2008); *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005); *United States v. Bacallao*, 149 F.3d 717, 720 (7th Cir. 1998). But even in the absence of express findings, we have upheld a district court's relevant-conduct findings where the record makes clear that the court adopted the facts in the presentence report and the government's conclusions from those facts. *Panaigua-Verdugo*, 537 F.3d at 726; *Bacallao*, 149 F.3d at 720.

Here, Ryan did not contest the facts in the presentence report, which the district court expressly adopted. The district court's comments at sentencing, which highlighted Ryan's purchase of a plane and two pieces of real estate, indicate that it also adopted the government's reasoning regarding the conclusions that can be drawn from those facts. In light of these comments, we see no basis to conclude that the court failed adequately to support its relevant-conduct finding. *See Bacallao*, 149 F.3d at 720 (concluding that district court embraced government's reasoning where court stated that it adopted probation officer's guidelines calculations and that sentence was based on only those acts the court found part of same course of conduct as offense of conviction); *see also United States v. Wilson*, 502 F.3d 718, 722–23 (7th Cir. 2007) (holding that district court did not err in failing to make express finding that prior drug transactions constituted relevant conduct where court's comments made clear that it believed transactions were part of same course of conduct as offense of conviction).

Accordingly, the judgment of the district court is **AFFIRMED**.