**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1761

_____

UNITED STATES OF AMERICA

v.

JAMES FRANCE,
Appellant

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2:21-cr-00235-001)
District Judge: Honorable Mark R. Hornak

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 23, 2026

Before: HARDIMAN, SCIRICA, and AMBRO, *Circuit Judges*.

(Filed: June 3, 2026)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

James France appeals his judgment of sentence for methamphetamine trafficking.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

He argues that the District Court erred in calculating his Guidelines range because it wrongly deemed a prior instance of possessing methamphetamine with intent to distribute "relevant conduct" under the United States Sentencing Guidelines § 1B1.3(a)(2). We will affirm.

I

A jury convicted France of possessing with intent to distribute and distributing 50 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). The trial evidence showed that in June 2016, France sold 55 grams of pure methamphetamine to a repeat customer—Paul Theriault—who was cooperating with federal agents and wearing a concealed recording device.

At sentencing, the Government introduced further evidence of France's methamphetamine-trafficking operation. Agents recounted statements from Theriault that France typically obtained his methamphetamine by traveling to California to purchase bulk quantities from suppliers in that state. Other evidence showed that France sold his California-sourced methamphetamine in smaller quantities to users in multiple states, including at least Pennsylvania, Ohio, and New York.

The Government also introduced at sentencing evidence of an incident in 2015 where police in Kinmundy, Illinois arrested France for possessing methamphetamine with intent to distribute. The police were called out to a dead-end road where they discovered France sitting in his SUV and two men—one associate of France's and one local resident—standing outside. France and his associate were passing through Illinois on their way back to Pittsburgh and stopped off so the associate could have sex with the

2

local man in France's SUV. Suspecting drug activity, the officers summoned a K-9 unit and then found nearly 50 grams of methamphetamine alongside scales, plastic bags, and other drug-distribution paraphernalia.

The police took France and his associate to the county jail, where they stayed overnight. The next day, France asked an officer to retrieve medication from his car. The officer obliged, and while in France's car he noticed a bag of what appeared to be more methamphetamine. The officer then obtained a warrant before seizing the bag, which contained over 1,300 grams of the drug. The officer also found more paraphernalia and discovered that the most recent entries in the SUV's GPS were addresses in California and Nevada. France's Illinois methamphetamine-trafficking charges were eventually dropped.

In calculating France's base offense level, the District Court determined that the Illinois incident was "relevant conduct" under § 1B1.3(a)(2) and thus included the methamphetamine from that incident in calculating the applicable drug quantity under § 2D1.1(c). The Court reasoned that France's sale of methamphetamine to Theriault and his travel through Illinois with a "distribution quantity" of methamphetamine "were part of a 'common scheme or plan'" and "demonstrate the same course of conduct (drug dealing with an interstate aspect)." App. 28–29. So the Court attributed to France the 1,344 grams he possessed in Illinois, in addition to 180 grams he sold to Theriault over the course of their relationship and 20 grams seized from France's home in 2017.

As the Court identified, 1,544 grams of regular methamphetamine merits a base offense level of 32. *See* U.S.S.G. § 2D1.1(a)(5) & (c)(4). After applying enhancements,

3

the District Court calculated an adjusted offense level of 36 and a criminal-history score of 1, yielding a Guidelines range of 188 to 235 months' imprisonment. U.S.S.G. § 5A. The Court varied downward and imposed a sentence of 151 months' imprisonment.

France timely appealed.

## II[1]

France contends that the District Court clearly erred in concluding that his possession of methamphetamine in Illinois constituted "relevant conduct" under section 1B1.3(a)(2) of the Guidelines. *See United States v. West*, 643 F.3d 102, 105 (3d Cir. 2011) (review of district court's determination of relevant conduct is for clear error). We disagree. Relevant conduct for calculating the drug quantity attributable to a defendant includes "acts . . . committed . . . by the defendant . . . that were part of the same course of conduct."[2] U.S.S.G. § 1B1.3(a)(2). The District Court here reasonably determined that France's possession of methamphetamine in Illinois and his sale of methamphetamine to Theriault were part of the same course of conduct.

The trial and sentencing evidence showed that France undertook a years-long course of interstate methamphetamine trafficking. As part of that course of conduct, he would sell to customers in Pittsburgh and other locales within a few hours' drive like Erie and Cleveland. He was tried and convicted in this case for one such sale. France's

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[2] It also includes acts that are "part of . . . a common scheme or plan as the offense of conviction," U.S.S.G. § 1B1.3(a)(2), but we have no need to determine whether the Illinois episode also fits that description.

trafficking operation also included intermittent travel to California and back to replenish his stock. The trial and sentencing evidence adequately supports the conclusion that France was doing just that when he was arrested in Illinois: he had in his car a distribution quantity of methamphetamine and distribution paraphernalia, and the car's GPS data evidenced that he was transporting it all from California back to Pittsburgh.

France does not dispute that his years-long practice of sourcing methamphetamine from California and selling it in and around Pittsburgh is a single "course of conduct," nor does he dispute that his sale to Theriault was "part of" that practice. He argues only that the Illinois episode was not sufficiently related to the Theriault sale and his regular trafficking activities. In support, he invokes factors that the commentary to § 1B1.3(a)(2) states will be useful to determine whether separate acts are part of the same course of conduct. The commentary directs courts to consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" to determine whether the separate offenses are related enough "to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n.5(B)(ii). Though the Government correctly points out that the commentary no longer controls our interpretation of Guidelines that are unambiguous, *see United States v. McIntosh*, 124 F.4th 199, 206 (3d Cir. 2024) ("If the Guideline is unambiguous, we disregard the commentary."), we need not undertake an ambiguity analysis here because France loses even assuming the commentary controls.

The commentary's first factor—degree of similarity between the Illinois possession and the sale to Theriault in Pittsburgh—weighs against France. Transportation

of methamphetamine from California to Pittsburgh for sale is similar conduct to selling California-sourced methamphetamine in Pittsburgh. Both were key steps in France's trafficking operation. France characterizes his conduct in Illinois as "jointly possessing a certain amount of methamphetamine" while meeting "with others to partake in sexual activity," which he says is not similar to selling. France Br. 23. But that characterization ignores all the evidence that he was transporting the methamphetamine *for distribution*. And it foregrounds his associate's sexual liaison, when in reality that liaison was a stopover on France's resupply journey.

The "regularity" factor also weighs against France. He regularly sourced methamphetamine from California before selling it in and around Pittsburgh, and the 2015 trip through Illinois was but one instance of France resupplying. His counterargument again relies on mischaracterizing the facts. France contends that his trafficking did not entail regular "trip[s] to Illinois," France Br. 24, but he was not on a trip *to* Illinois—he was passing through on his way from California to Pittsburgh.

Lastly, the 15-month time interval separating France's Illinois conduct and the sale to Theriault does not weigh strongly enough in France's favor to tip the balance. Even granting that 15 months is a "substantial period of time," France Br. 10, the commentary France cites recognizes that close temporal proximity between acts is unnecessary where the acts in question are similar and the defendant regularly undertook them. *See* U.S.S.G. § 1B1.3, cmt. n.5(B)(ii) ("[A] defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals."). France's continuous trafficking of

6

methamphetamine over several years necessarily included actions that were years apart. So the long period between the Illinois arrest and the sale to Theriault, standing alone, is not enough for us to say that the District Court clearly erred in concluding that the two actions were part of the same course of conduct.

In addition to the Guidelines commentary, France relies heavily on the Seventh Circuit's decision in *United States v. Bacallao*, 149 F.3d 717 (7th Cir. 1998). There, the two cocaine purchases alleged by the Government to be relevant conduct were undertaken by the defendant's associates, the purchases were geographically and temporally distant from the defendant's arrest, and nothing besides the defendant's association with the purchasers tied the purchases to his known cocaine-trafficking conduct. *Id.* at 718–21. Here, by contrast, there is evidence that France's conduct in Illinois and his sale to Theriault were, as the District Court put it, "of a kind." App. 29.

In Illinois, France was carrying out one step of his typical sourcing-and-selling cycle—moving the methamphetamine from California (his typical sourcing location) to Pittsburgh (his typical dealing location). His conduct of conviction was another step in that cycle—selling the methamphetamine to people in and around Pittsburgh. France's attempt to analogize to *Bacallao* because of the geographic and temporal distance between his convicted conduct and Illinois conduct, is, again, a red herring. He trafficked methamphetamine interstate for years, so the actions he took in furtherance of that trafficking will of course span several states and years.

* * *

For the reasons stated, we will affirm the judgment of sentence.

7